IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL LESHO,                                          Case No. 04-73150
                                                       Hon. Patrick J. Duggan
       Plaintiff,

v

TEXTRON, INC.,

       Defendant.

_____

**KAECHELE & WILENSKY**         **KERR, RUSSELL and WEBER, PLC**
By: Neal J. Wilensky (P35182)    By: Robert A. Marsac (P17114)
Attorneys for Plaintiff           Lisa A. Robinson (P38141)
10775 S. Saginaw              Attorneys for Defendant
Suite C                     500 Woodward Avenue
Grand Blanc, MI 48439       Suite 2500
(810) 606-0410               Detroit, MI 48226
                           (313) 961-0200

_____

## <u>NOTICE OF HEARING</u>

**PLEASE TAKE NOTICE** that the attached Defendant's Motion for Summary Judgment

will come on to be heard before the Honorable Patrick J. Duggan, United States District Court,

Eastern District of Michigan, on a date and time to be set by the Court.

                          Respectfully submitted,

                          Kerr, Russell and Weber, PLC

                          /s/ Lisa A. Robinson
                          500 Woodward Ave.
                          Suite 2500
                          Detroit, MI 48226
                          (313) 961-0200
                          Lar@krwlaw.com
Dated: April 15, 2005         P38141

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL LESHO,                                    Case No. 04-73150
                                                 Hon. Patrick J. Duggan
        Plaintiff,

v

TEXTRON, INC.,

        Defendant.

_____

**KAECHELE & WILENSKY**                **KERR, RUSSELL and WEBER, PLC**
By:  Neal J. Wilensky (P35182)         By:  Robert A. Marsac (P17114)
Attorneys for Plaintiff                Lisa A. Robinson (P38141)
10775 S. Saginaw                       Attorneys for Defendant
Suite C                                500 Woodward Avenue
Grand Blanc, MI 48439                  Suite 2500
(810) 606-0410                         Detroit, MI 48226
                                       (313) 961-0200

_____

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

        Defendant Textron, Inc., by its attorneys, Kerr, Russell and Weber, PLC, respectfully states as its Motion for Summary Judgment ("**Motion**"), as follows:

        1.      This product liability case arises out of alleged injuries to Plaintiff Daniel Lesho ("**Plaintiff**") following an August 11, 2001 accident ("**Accident**") wherein a powered industrial cart allegedly manufactured by Defendant Textron, Inc. ("**Defendant**") inadvertently moved and hit Plaintiff after a co-worker, who failed to place the cart in park and turn off the power to the cart, dropped a ladder on the accelerator pedal, allegedly causing it to lurch forward.

    2.      Discovery is this matter is closed and trial is scheduled for the July/August term.

    3.      Defendant requests that this Court enter summary judgment in favor of the Defendant pursuant to Fed R Civ P 56(c) and 37(c)(1) because:

    a.      Plaintiff cannot identify the specific product, a powered industrial vehicle, which allegedly caused his injuries, thus precluding liability under *Abel v Eli Lilly & Co*, 418 Mich 311, 324; 343 NW2d 164 (1984);

    b.      At the time the powered industrial vehicle which allegedly caused Plaintiff's injuries was sold, the aspect of the powered industrial vehicle that allegedly caused the harm was in compliance with the relevant government and industry regulations and standards, thus precluding liability under MCL 600.2946(4);

    c.      A safety device installed by Defendant was materially altered after it left Defendant's control, resulting in injury to Plaintiff and such alteration was not reasonably foreseeable by Defendant;

    d.      Plaintiff cannot establish the duty element of a defective design claim under Michigan's Product Liability Act, MCL 600.2945, *et. seq*.; and

    e.      Plaintiff cannot establish the causation element of a defective design claim under Michigan's Product Liability Act, MCL 600.2945, *et. Seq*

.

    4.      At the April 6, 2005 deposition of Mr. Koenig, Defendant discussed this Motion with Plaintiff's counsel and requested that Plaintiff dismiss his claims. Such relief was denied, thus necessitating this Motion.

**WHEREFORE,** Defendant Textron, Inc., respectfully requests that this Court grant this Motion, and enter Judgment pursuant to Fed R Civ P 56(c) in favor of the Defendant and against

Plaintiff, together with an assessment of costs and attorneys' fees as permitted under Fed R Civ P 37(c)(1).

<div style="margin-left: 40%;">

Respectfully submitted,

Kerr, Russell and Weber, PLC


/s/ Lisa A. Robinson
500 Woodward Ave.
Suite 2500
Detroit, MI 48226
(313) 961-0200
Lar@krwlaw.com
P38141

</div>

Dated:   April 15, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL LESHO,                                    Case No. 04-73150
                                                 Hon. Patrick J. Duggan

      Plaintiff,

v

TEXTRON, INC.,

      Defendant.

_____

**KAECHELE & WILENSKY**              **KERR, RUSSELL and WEBER, PLC**
By:  Neal J. Wilensky (P35182)       By:  Robert A. Marsac (P17114)
Attorneys for Plaintiff              Lisa A. Robinson (P38141)
10775 S. Saginaw                     Attorneys for Defendant
Suite C                              500 Woodward Avenue
Grand Blanc, MI 48439                Suite 2500
(810) 606-0410                       Detroit, MI 48226
                                     (313) 961-0200

_____

<u>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. iii

STATEMENT OF ISSUES PRESENTED .......................................................................... v

MOST CONTROLLING AUTHORITY ............................................................................ vi

I.      INTRODUCTION ................................................................................................. 1

II.     FACTS ................................................................................................................... 1

        A.      The Parties ................................................................................................. 1

        B.      The Powered Industrial Vehicle.............................................................. 1

        C.      The Accident ............................................................................................ 3

                1.      The Complaint .......................................................................... 3

                2.      The General Motors Records ................................................... 4

                3.      The Medical Records ............................................................... 4

                4.      Insurance Claim ....................................................................... 4

                5.      The Testimony ......................................................................... 5

        D.      Plaintiff's Product Liability Claims........................................................ 6

        E.      Identification of the Cart.......................................................................... 6

                1.      Supplier's Identification of the Cart ....................................... 7

                2.      Plaintiff's Identification of the Cart........................................ 7

                3.      Mark Bowen's Identification of the Cart ................................. 8

                4.      The Expert's Identification of the Cart ................................... 8

        F.      The Operator Present Switch ................................................................... 8

        G.      Incidence of Inadvertent Movement in Powered Industrial Vehicles......... 9

III.   ARGUMENT....................................................................................................... 10

A.      Standard ............................................................................................ 10

B.      Defendant Cannot be Held Liable Where the Cart Was in Compliance
        with Government and Industry Standards.................................................. 11

C.      Defendant Cannot be Held Liable Where A Safety Device Installed by
        Defendant was Removed after the Cart left Defendant's Control ............ 13

D.      Defendant Cannot be Held Liable for Misuse of the Cart ........................ 14

E.      Defendant Cannot be Held Liable Where Plaintiff Cannot Establish the
        Duty Element of a Defective Design Claim .............................................. 15

F.      Defendant Cannot Be Held Liable Where Plaintiff Cannot
        Establish the Causation Element of a Defective Design Claim................ 17

        1.      Cause in Fact................................................................................ 18

        2.      Superseding/Intervening Cause .................................................... 19

        3.      The Operator Present Switch ........................................................ 19

IV.  CONCLUSION ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abel v Eli Lilly & Co*, 418 Mich 311 NW2d 164 (1984) ........................................ 3, iv, v, 6

*Adams v Perry Furniture Co,* 198 Mich App 1; 497 NW2d 514 (1993) ......................... 16

*Allied Electrical Supply Co v Tenaglia*, 461 Mich 285; 602 NW2d 572 (1999) .............. 16

Anderson v Liberty Lobby, Inc, 477 US 242 (1986) ........................................................ 11

*Cacevic v Simplimatic Engineering Co (On Remand),* 248 Mich App 670; 645 NW2d 287 (2001) ........................................................................................................ 16

Celotex Corp v Catrett, 477 US 317 (1986) ...................................................................... 11

*Cooper v Wade*, 463 Mich 1211; 618 NW2d 590 (2000) .................................................. 18

*Dedes v South Lyon Community Schools,* 199 Mich App 385; 502 NW2d 720 (1993) ... 18

Matsushita Elec Indus Co v Zenith Radio Corp, 475 US 574 (1986) .............................. 11

*Ridley v Detroit,* 231 Mich App 381; 590 NW2d 69 (1998) ............................................ 19

*Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 ................................ 1, 2, 4, i, 18, 20, 1

*Skinner v Square D Co,*  445 Mich 153; 516 NW2d 475 (1994) ...................................... 17

**Statutes**

MCL 600.2945 ................................................................................... 3, iv, v, 1, 14, 16

MCL 600.2946(4) ........................................................................................... 3, iv, 11, 13

MCL 600.2947(2). ............................................................................................................ 15

**Other Authorities**

1979 AC, R.408.12101, ................................................................................................... 13

29 CFR 1910.178 .............................................................................................. 11, 13, 15

**Rules**

Fed R Civ P 56(c) .................................................................................................. 1, 10, 20

Fed R. Civ  P 37(c)(1) ................................................................................................ 1, 20

Fed R Civ P 56(c) .................................................................................................. 3, 10, 20

## STATEMENT OF ISSUES PRESENTED

**IN THIS PRODUCT LIABILITY ACTION BASED ON AN ALLEGED DESIGN DEFECT, IS DEFENDANT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW WHEN:**

a.      Plaintiff cannot identify the specific product, a powered industrial vehicle, which allegedly caused his injuries, thus precluding liability under *Abel v Eli Lilly & Co*, 418 Mich 311, 324; 343 NW2d 164 (1984);

b.      At the time the powered industrial vehicle which allegedly caused Plaintiff's injuries was sold, the aspect of the powered industrial vehicle that allegedly caused the harm was in compliance with the relevant government and industry regulations and standards, thus precluding liability under MCL 600.2946(4);

c.      A safety device installed by Defendant was materially altered after it left Defendant's control, resulting in injury to Plaintiff and such alteration was not reasonably foreseeable by Defendant;

d.      Plaintiff cannot establish the duty element of a defective design claim under Michigan's Product Liability Act, MCL 600.2945, *et. seq*.; and

e.      Plaintiff cannot establish the causation element of a defective design claim under Michigan's Product Liability Act, MCL 600.2945, *et. seq.*

**Defendant Answers Yes.**

## MOST CONTROLLING AUTHORITY

MCL 600.2945, et seq.


Abel v Eli Lilly & Co, 418 Mich 311, 324; 343 NW2d 164 (1984)

I.      **INTRODUCTION**

This case arises out of alleged injuries to Plaintiff Daniel Lesho ("**Plaintiff**") following an August 11, 2001 accident ("**Accident**") wherein a powered industrial cart allegedly manufactured by Defendant Textron, Inc. ("**Defendant**") inadvertently moved and hit Plaintiff. The co-worker failed to place the cart in park and turn off the power to the cart, dropped a ladder on the accelerator pedal, allegedly causing the cart to lurch forward. Summary judgment in favor of the Defendant pursuant to Fed R Civ P 56(c) and Fed R. Civ P 37(c)(1) is proper because Plaintiff cannot establish a *prima facie* case under Michigan's Product Liability Act. MCL 600.2945, et. seq.

II.     **FACTS**

    A.      **The Parties**

1.      **Plaintiff Daniel Lesho**, 50**,** claims in his Complaint that he was an electrician working for General Motors Corporation ("**GM**") at Pontiac East, Truck and Bus, on August 11, 2001 when he sustained personal injury as a result of the Accident. **Exhibit A,** ¶ 15, Complaint.

2.      **Defendant Textron, Inc.** allegedly designed and manufactured the product at issue, a powered industrial vehicle known as an E-Z-GO Workhorse, an industrial truck similar in form to a golf cart. **Exhibit** A, ¶ 14.

    B.      **The Powered Industrial Vehicle**

Plaintiff alleges that the powered industrial vehicle which caused the Accident was a Model year 2000 E-Z-GO Workhorse designed and manufactured by Defendant in 1999, with serial number1244060 (the "**Cart**"). **Exhibit** A, ¶ 10. That Cart, as manufactured, was equipped with a series of safety controls, including, a dash mounted key switch, reverse warning indicator, 'deadman' accelerator control, integral handgrip on hip restraints, manual

forward/reverse/neutral selector and an electric horn.  **Exhibit B,** Owner's Manual and Service Guide, "**Owner's Manual,**" p 22.  In addition, the Cart was equipped with both a service brake and a parking brake. *Id.*

At Plaintiff's request, GM produced the Cart for inspection in September 2004.  That Cart was an electric powered, bright yellow, four wheeled cart with readable warnings and instructions.  Immediately in front of both the driver and the passenger was a plate which read, in relevant part:

> **!WARNING!       FAILURE TO FOLLOW THESE INSTRUCTIONS MAY RESULT IN SEVERE PERSONAL INJURY.**
>
> *          *          *
>
> **Before leaving vehicle, turn key "OFF," move the direction indicator to neutral "N" position and engage parking (PARK) brake.**

At the inspection, the Cart had a switch under the operator's seat which prohibited movement unless the driver was seated on the bench.   While Plaintiff refers to this switch as a "deadman's switch," the industrial powered vehicle industry refers to it as an "Operator Present Switch." **Exhibit C,** Fisher dep. tr. p 24.  It is undisputed that that Switch on the Cart was not designed or installed by Defendant.  *Id.* at 23, 24, 43.

Significantly, at the inspection, the Cart did not have the dash mounted key switch installed by Defendant before leaving its control.  **Exhibit D,** Koenig dep tr, pp 91, 130-132.  Rather, Chief Cart, the company which sold the Cart to GM, altered the Cart by removing the key switch and installing an ON/OFF toggle switch.  **Exhibit E,** Fagan dep tr, pp 32-33.  Chief Cart did not seek permission from Defendant before making the change and, it did not change the related labels regarding function on the Cart.  *Id.* at 132-134.  In fact, according to Plaintiff's

expert, the toggle switch was incorrectly labeled such that Off meant On and *vice versa*. *Id*. at 130.

When the Cart left Textron's control, it was accompanied by the Owners Manual **Exhibit E**, Fagan dep tr pp 28-29.  The driver of the Cart at the time of the accident, Mark Bowen ("**Mr. Bowen**") admits he reviewed the Owners' Manual and his training included instructions for applying the brakes.  **Exhibit F,** Bowen dep tr pp 53-55.  Significantly, the Owners Manual  Mr. Bowen reviewed states:

> **To prevent inadvertent operation of the vehicle when left unattended, the key should be removed while in the "OFF" position.**

Plaintiff's expert, Milton Koenig ("**Mr. Koenig**"), admits there is no evidence that the Cart malfunctioned on the date of the Accident.  **Exhibit D**, Koenig dep tr p 138.   Significantly, Plaintiff, Mr. Bowen and Mr. Koenig all agree:  had Mr. Bowen followed the manufacturer's prescribed operating instructions for the Cart, the Accident would not have occurred.  **Exhibit F**, Bowen dep tr p 57;  **Exhibit G,** Lesho dep tr p 158; **Exhibit D,** Koenig dep tr p 173; **Exhibit H,** Plaintiff's Responses to Request for Admissions ("**RFA Responses**"), No. 23.

### C.   The Accident

Since the Accident occurred, Plaintiff has told several different versions of how the Accident occurred.

#### 1.   The Complaint

According to the Complaint, Plaintiff was working at the Truck & Bus Plant in an area near where a ladder was stacked up against parts.  The ladder fell and hit the accelerator pedal of a powered industrial vehicle  **Exhibit A,** ¶ 9, causing the vehicle to move forward knocking into Plaintiff and causing injuries to this right knee and leg.  **Exhibit A**, ¶ 10.  Plaintiff claims he suffered pain, suffering, distress, loss of wages, loss of earning capacity. **Exhibit A**, ¶ 16.

### 2. The General Motors Records

Plaintiff reported a different version of how the Accident occurred when he was interviewed by GM personnel.  On the date of the Accident, Plaintiff told the security guard that, "I was getting ladder off me (sic) cart and some how the ladder hit the switch and the cart pinned me against the guard rail."  **Exhibit I,** GM000116.

In addition, when an OSHA investigation was being conducted, Plaintiff reported that he was moving a ladder off a cart and the ladder hit the controls, turning the cart on and pinning Plaintiff against the guard rail.  **Exhibit J,** GM000127, item 13.

### 3. The Medical Records

Plaintiff told third, fourth and fifth versions of the facts leading up to the Accident to his medical care providers.  On August 11, 2001, Plaintiff told the physicians taking a history and physical that, "he was working at General Motors [that] morning and was hit by a ladder, injuring his right femur." **Exhibit K**, Doc. # 64135.

Later that day, Plaintiff told his surgeon that he "fell while at General Motors earlier [that] morning." **Exhibit L**, SJMH 000195.

On December 26, 2001, Plaintiff reported to his doctors at Physiotherapy Associates that, "…while at work in August of 2001, a ladder fell on his right leg and smashed his femur between a wall and the ladder."  **Exhibit M,** 12/26/01 Initial Note.

### 4. Insurance Claim

Version six of the Accident came in an insurance claim form.  On August 14, 2001, Plaintiff's treating physician filled out an insurance form for Plaintiff based on information provided by Plaintiff.  It states that Plaintiff was "hit by ladder at GM." **Exhibit N,** Claim Form.

5.      **The Testimony**

The seventh and eighth versions of the Accident were told at the depositions of the only two witnesses, Plaintiff and his electrician co-worker, Mr. Bowen.   Both agree they were asked to investigate a lighting fixture which was not working.   **Exhibit F**, Bowen dep. tr. pp 9-11; **Exhibit G,** Lesho dep. tr. p 126.  Mr. Bowen took a six-foot fiberglass ladder and loaded it onto the front seat of the Cart allegedly assigned to the electricians working in the General Assembly Department.[1]  **Exhibit F**, Bowen dep tr p 14.  With Plaintiff as his passenger, Mr. Bowen drove to the light fixture and parked the Cart.   **Exhibit F**, Bowen dep tr pp 14, 20-22; **Exhibit G**, Lesho dep tr pp 127-128.  Despite his training, and ignoring the warning of severe injury, Mr. Bowen, in parking the Cart,  did not turn off the power to the Cart, did not move the direction indicator to the neutral position,  and did  not engage the parking brake. **Exhibit F,** Bowen dep tr p 34; **Exhibit G,** Lesho dep tr pp 128-130).

Plaintiff and Mr. Bowen went outside to look at the lighting fixture and then returned inside when they could not fix the problem.   Plaintiff testified that when he came inside, he turned toward the wall, following the conduit on the wall while Mr. Bowen walked toward the Cart to return the ladder to the front seat.   **Exhibit G**, Lesho dep tr pp 134.  Plaintiff admits he does not know how the accident occurred.   **Exhibit G**, Lesho dep tr pp 146-147.

Mr. Bowen testified that the Accident occurred as he was standing on the passenger side of the Cart, placing the ladder back on the Cart. **Exhibit F**, Bowen dep. tr. pp  25-29.  He states that as he pivoted the ladder into the seat, he was looking up at the top of the ladder when the

---

[1] Plaintiff testified that a workplace sign prohibited the transport of ladders on carts.  **Exhibit G,** p 136.

Cart began to move.  *Id.*  He states that the next thing he knew, Plaintiff was pinned against a guard post, facing away from the wall and leaning on the front of the Cart.  *Id.*  Significantly, Mr. Bowen testified that he never saw the Cart hit the Plaintiff and he never saw the leg of the ladder hit the accelerator pedal.  **Exhibit F**, Bowen dep. tr. pp 17, 28.

### D.      Plaintiff's Product Liability Claims

In Count I of his two count Complaint, Plaintiff claims that Defendant negligently designed, manufactured, produced and distributed the Cart in that:

        a.      It did not have the redundant seat power cut off button.

        b.      It did not have any type of accelerator pedal guard.

        c.      It was foreseeable that without the seat power cut off button that an outside event or part such as a ladder could hit the accelerator button when the E-Z Go cart was parked and propel it forward without human intervention.

        d.      Other E-Z Go Carts made by Textron and other manufacturers of similar carts had the seat power cut off buttons.

**Exhibit A**, ¶ 14.  In Count II, Plaintiff claims that the Cart, as designed, was not fit for its reasonably foreseeable and intended use for the same reasons.

### E.      Identification of the Cart

Plaintiff claims that the Cart caused his injuries.  **Exhibit A**, ¶ 10.  The claim that the Cart was manufactured by Defendant is speculative because Plaintiff cannot, with the requisite specificity, identify which of the many GM carts were involved in the Accident.[2]

---

[2]The prerequisite in every products liability action is identification of the injury causing product and its manufacturer.  *Abel v Eli Lilly & Co*, 418 Mich 311, 324; 343 NW2d 164 (1984).  Plaintiff cannot meet that prerequisite, and, accordingly, summary judgment is proper.

### 1.      Supplier's Identification of the Cart

In June 1999, Chief Cart sold eighteen (18) Textron carts to GM, twelve (12) of which were four passenger vehicles and six (6) of which were two passenger carts with a utility box at the rear. **Exhibit G**, Fagan dep tr pp 14-17.   According to Chief Cart, the cart with the serial number identified by Plaintiff was one of the two passenger powered industrial vehicles. **Exhibit G**, Fagan dep tr pp 16-17.

### 2.      Plaintiff's Identification of the Cart

Plaintiff testified that his department used four powered industrial vehicles, two of which were four wheelers with a two passenger capacity. **Exhibit H,** Lesho dep tr pp 84-87.  He does not recall any specific markings on the two four wheelers. **Exhibit G,** Lesho dep tr pp 87-89.

On the date of the Accident, Plaintiff did not obtain any information with which to identify the Cart involved in the Accident, including the serial number.  **Exhibit H,** RFA Responses, No. 73.  In fact, it was months after the Accident that Plaintiff asked Mr. Bowen to obtain the serial number for the Cart he believed was involved in the accident.  **Exhibit G,** RFA Responses, No. 77.  Plaintiff testified that the only difference he was aware of between the two carts was that the one involved in the Accident had his tool box on the back.  **Exhibit G,** Lesho dep tr pp 100-102.  He testified that he directed his coworkers to the Cart onto which he had placed his tools months before because that was the one involved in the Accident.  **Exhibit G,** Lesho dep tr pp 84-89, 98-102.  Unfortunately, Mr. Bowen testified that on the date of the Accident, he took Plaintiffs' tools out and placed them in Plaintiff's locker.  **Exhibit F**, Bowen dep tr p 60.  Accordingly, when Mr. Bowen back  went months later to identify the serial number of the Cart, Plaintiff's tools were not there to identify the correct cart.

### 3.     Mark Bowen's Identification of the Cart

Mr. Bowen confirmed that in 2001, there were two carts assigned to Plaintiff's department and testified that there was no discernable differences between the carts. **Exhibit F**, Bowen dep tr p 15.

### 4.     The Expert's Identification of the Cart

Mr. Koenig testified that GM has many different types of industrial powered vehicles at its facilities, but he did not know how many it had at the Pontiac Truck & Bus Plant on the date of the Accident. **Exhibit D**, Koenig dep tr pp 146-147. At deposition, he could not identify the specific type of cart involved in the accident *Id.* at 119. In fact, Mr. Koenig assumed that the Cart involved in the Accident was the one he inspected and he did not undertake any investigation to confirm that fact. **Exhibit D**, Koenig dep tr p 136.

### F.     <u>The Operator Present Switch</u>

Mr. Koenig testified that this is a case of inadvertent movement of a vehicle causing injury, **Exhibit D**, Koenig dep tr pp 16-17, and that the installation of a switch requiring an operator to be present in the seat of an industrial vehicle would probably eliminate the possibility of injury. **Exhibit D**, Koenig dep tr pp 49-51. Significantly, Mr. Koenig does not know when such Switches were first installed in industrial vehicles. **Exhibit D**, Koenig dep tr p 98.

At deposition, Mr. Koenig could not identify a single government or industry standard requiring the installation of an Operator Present Switch in an industrial powered vehicle, **Exhibit D**, Koenig dep tr pp 29-30, 45-46, 85-86, 163, nor could he identify with any degree of specificity which of the vehicles, if any, used at the GM plant or used by the electricians were equipped with such Switches and when. **Exhibit D**, Koenig dep tr pp 117-118. Further, Mr. Koenig admitted he had no evidence relating to the number or type of similar carts manufactured

by companies other than the Defendant in 1999 or 2000 or whether those carts were equipped with Operator Present Switches. **Exhibit D**, Koenig dep tr pp 144-145. Plaintiff's expert could not identify a single industrial vehicle similar to Defendant's E-Z-GO Workhorse 800E which was distributed with such a Switch or which was retrofitted with such a Switch prior to 1999, the year the Cart was manufactured.

Plaintiff admits that prior to the Accident, GM, one of the world's largest and most sophisticated owners and users of powered industrial vehicles,[3] had not equipped a majority of its powered industrial vehicles with Operator Present Switches, **Exhibit H,** RFA Responses, Nos. 65 and 66, and, that while GM installed such Switches on some of its powered industrial vehicles, it did not routinely install them on all of its powered industrial vehicles. *Id.* at 79.

### G.      Incidence of Inadvertent Movement in Powered Industrial Vehicles

Despite proffering expert testimony that Operator Present Switches are required in powered industrial vehicles such as the Cart, Plaintiff has no evidence relating to the magnitude of the foreseeable risks of operating powered industrial vehicles or the likelihood of inadvertent movement precipitating the need for the Switch. At deposition, Plaintiff's expert testified that in the design process, the design engineer has to determine: 1. if there is a potential hazard; 2. how serious that hazard is; 3. the consequences of failing to protect against that hazard; and 4. the potential injury resulting from failure to protect against the hazard. **Exhibit D**, Koenig dep tr pp 17-18. Applying those principles to this case, Mr. Koenig advised Plaintiff that:

> *I don't know whether the claim that these types of vehicles should have [an Operator Present Switch] will be accepted by a jury, unless we can get data that shows a high frequency of accidents where the cart moved accidentally by depression of the accelerator pedal.*

---

[3] See **Exhibit D**, Koenig dep tr pp 147-148.

**Exhibit D,** Koenig dep tr pp 92-93; **Exhibit O**, July 9, 2002 letter, Exhibit 2 to Koenig dep. Plaintiff admits that he has no evidence that any GM powered industrial vehicle was involved in an accident resulting from the inadvertent depression of the accelerator pedal prior to the Accident. **Exhibit H,** RFA Responses, No. 59.

Mr. Koenig never conducted any research, investigation or analysis to determine the likelihood of an accident occurring involving the inadvertent movement of a powered industrial vehicle. **Exhibit D**, Koenig dep tr pp 173-175. Further, he did not review any information relating to the frequency of accidents involving the inadvertent movement of any vehicle and, with respect to the Cart, Mr. Koenig testified that because the production numbers of the cart were low and the application of it in an industrial setting was even lower, it would be speculative to come up with any statistical probability of such an accident occurring with this particular kind of cart. **Exhibit D,** Koenig dep tr pp 92-93. Mr. Koenig admitted that he had no evidence as to whether Defendant's key competitor ever received notice of an accident involving inadvertent movement of one of its carts. **Exhibit D**, Koenig dep tr pp 145-146. In fact, Plaintiff's expert acknowledged that he is unaware of a single incident in which a person was injured as a result of inadvertent movement caused by an item falling on an accelerator pedal of a powered industrial vehicle. **Exhibit D**, Koenig dep tr pp 93-94.

**III.** **ARGUMENT**

**A.** **Standard**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R Civ P 56(c). An issue of fact is "genuine" if the evidence is such that a reasonable trier of fact

could return a verdict for the nonmovant. *See Anderson v Liberty Lobby, Inc*, 477 US 242, 248

(1986). The substantive law identifies facts that are "material." Facts are "material" only if their

establishment might affect the outcome of the lawsuit under governing substantive law.

*Anderson*, 477 US at 248. A complete failure of proof concerning an essential element

necessarily renders all other facts immaterial. *See Celotex Corp v Catrett*, 477 US 317, 324-25

(1986). When reviewing a motion for summary judgment, the evidence and all reasonable

inferences drawn therefrom are viewed in the light most favorable to the nonmoving party. *See*

*Matsushita Elec Indus Co v Zenith Radio Corp*, 475 US 574, 587 (1986).

### B.   Defendant Cannot be Held Liable Where the Cart Was in Compliance with Government and Industry Standards

MCL 600.2946(4) provides, in relevant part:

*In a product liability action brought against a manufacturer ... for harm allegedly caused by a product, there is a rebuttable presumption that the manufacturer or seller is not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that allegedly caused the harm was in compliance with standards relevant to the event causing the death or injury set forth in a federal or state statute or was approved by, or was in compliance with regulations or standards relevant to the event causing the ... injury promulgated by, a federal or state agency responsible for reviewing the safety of the product.*

Defendant met all government and industry standards in the design and manufacture of the Cart,

and, as such, it cannot be held liable to Plaintiff.   In its promotional material for the Cart,

Defendant states, in relevant part:

> E-Z-GO vehicles meet the most stringent manufacturing and safety standards in the industry.  All of our electric vehicles have been thoroughly inspected to meet the criteria necessary for the I.L. Label of Certification.  Both the gas and electric vehicles meet all of the applicable safety standards, including: ASME's/ANSI B56.8, ANSI/NFPA-505, ANSI/UL-583, and OSHA 1910.178 for industrial trucks.

The applicable government standard, 29 CFR 1910.178 entitled, "Powered Industrial

Truck," governs all design and safety requirements for the Cart.  It states, in relevant part:

**1910.178(a)(1)**

*This section contains safety requirements relating to fire protection, design, maintenance, and use of fork trucks, tractors, platform lift trucks, motorized hand trucks, and other specialized industrial trucks powered by electric motors or internal combustion engines. . .*

**1910.178(a)(2)**

*All new powered industrial trucks acquired and used by an employer after the effective date specified in paragraph (b) of 1910.182 shall meet the design and construction requirements for powered industrial trucks established in the "American National Standard for Powered Industrial Trucks, Part II, ANSI B56.1-1969", which is incorporated by reference as specified in Sec. 1910.6, except for vehicles intended primarily for earth moving or over-the-road hauling.*

Under the federal government standard then, the Defendant, in designing and manufacturing the Cart, was required to meet all standards set forth in ANSI B56.8 entitled, "Safety Standard for Personnel and Burden Carriers." **Exhibit P**, ANSI B56.8.  In the section describing the scope of the Standard, it states:

*Establishment of the safety requirements related to the elements of design, operation, and maintenance; standardization relating to principal dimensions to facilitate interchangeability, test methods, and test procedures of powered... industrial trucks... and maintenance of liaison with the International Organization for Standardization in all maters pertaining to powered . . . industrial trucks.*

*Id.* at 1. The Standard goes on to say that one purpose of the Standard is to serve as "a guide to governmental authorities having jurisdiction over subjects within the scope of the Standard." *Id.* Further, it was expected that, "the Standard will find a major application in industry, serving as a guide to manufacturers, purchasers, and users of the equipment."   *Id.*

Significantly, there is nothing in the B56.8 standard which requires the installation of an Operator Present Switch on the Cart.  In fact, Plaintiff's expert was unable at deposition to cite a single government or industry standard which required Defendant to include such a Switch on

the Cart in 1999.  Accordingly, Defendant, having complied with all federal, state[4] and industry standards, cannot be held liable to Plaintiff under MCL 600.2946(4) and summary judgment is proper.

> **C.**   **Defendant Cannot be Held Liable Where A Safety Device Installed by Defendant was Removed after the Cart left Defendant's Control**

MCL 600.2946(1) governs the liability of a manufacturer when the product at issue is altered after leaving the manufacturer's control.  It provides:

> *A manufacturer or seller is not liable in a product liability action for harm caused by an alteration of the product unless the alteration was reasonably foreseeable. Whether there was an alteration of a product and whether an alteration was reasonably foreseeable are legal issues to be resolved by the court.*

In this case, the Cart was materially altered after it left Defendant's control.  Specifically, a critical safety feature, the key switch, was removed at GM's request to the supplier. **Exhibit E**, Fagan dep tr p 32-33; **Exhibit D**, Koenig dep tr pp 91, 130-132.   In the Owner's Manual, users are warned to remove the key from the key switch before leaving the Cart unattended in order to prevent the exact type of accident at issue here – inadvertent movement.  **Exhibit B**, Owners Manual.   At deposition, Plaintiff's expert testified that the alteration constituted a "material change," in the design of the Cart. **Exhibit D,** Koenig dep tr p 133.

The material alteration of the Cart's key switch was not foreseeable by Defendant.  Under 29 CFR 1910.178(a)(4), such a change was not permitted without Defendant's prior written permission.  **Exhibit D,** Koenig dep tr pp 132-133.  That regulation provides:

> *Modifications and additions which affect capacity and safe operation shall not be performed by the customer or user without manufacturers prior written approval. Capacity, operation, and maintenance instruction plates, tags, or decals shall be changed accordingly.*

---

[4] Part 21, Powered Industrial Trucks, of the Michigan Administrative Code governs the Cart. 1979 AC, R.408.12101, *et. seq.* It sets forth minimum safety device requirements.  It does not require an Operator Present Switch.

At deposition, Plaintiff's expert admitted there is no evidence that any party sought or received the Defendant's approval to alter the key switch or that the instruction tags were changed as required. **Exhibit D,** Koenig dep tr pp 130-134.   In fact, Mr. Koenig testified that when the key switch was replaced with a toggle switch, the original labeling remained unchanged and did not give the user a clear indication of the ON/OFF position. **Exhibit D,** Koenig dep tr p 130.   In fact, he testified that the controls were "mislabeled," leading to "confusion." *Id.*

This Court should determine as a matter of law that the Defendant is not liable where the safety control on the Cart specifically intended to prevent inadvertent movement was removed after the Cart left Defendant's custody.  Fed. R. Civ. P. 56(c).

### D. Defendant Cannot be Held Liable for Misuse of the Cart

Under MCL 600.2947(2), Defendant cannot be held liable where its product was misused.  It provides:

*A manufacturer or seller is not liable in a product liability action for harm caused by misuse of a product unless the misuse was reasonably foreseeable. Whether there was misuse of a product and whether misuse was reasonably foreseeable are legal issues to be resolved by the court.*

MCL 600.2945(1)(e) defines misuse:

*"**Misuse**" means use of a product in a materially different manner than the product's intended use. Misuse includes uses inconsistent with the specifications and standards applicable to the product, uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product, and uses other than those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstances.*

In its Owner's Manual and on the front dash of the Cart, Defendant warned that severe personal injury could result if, when leaving the Cart, the operator did not: 1. turn the turn key to "OFF;" 2.  move the direction indicator to neutral "N" position; and 3. engage the parking brake. **Exhibit B**, Owners Manual; **Exhibit D,** Koenig dep tr pp 127-129.  Plaintiff, Mr. Bowen and the

expert all agree that had those instructions been followed, the Accident would not have occurred. *Supra*.  Mr. Bowen clearly misused the Cart when he did not employ any of the three required steps.

Such misuse was not foreseeable by the Defendant.  Under both OSHA and MIOSHA, GM was required to train its workers on the proper use of the Cart and to issue a certification to Mr. Bowen only if it found him to be competent and fully capable of operating the Cart properly. 29 CFR 1910.178(l)(1)and (5); R.40812151- 12154.  In fact, GM had a legal duty to ensure that Mr. Bowen received training on the operating instructions, warning and precaution for the specific type of truck he was authorized to operate,  29 CFR 1910178(l)(3)(i)(A), as well as the operating instructions, warning and precautions listed in the Operator's Manual for the Cart.   29 CFR 1910178(l)(3)(i)(M).

In addition, federal regulations specifically required the operator of the Cart to neutralize the controls, shut off the power and set the brake before leaving the Cart unattended. CFR 1910.178(m)(i).  Finally, the federal regulations required Mr. Bowen to set the brake and place wheel blocks to prevent movement of the Cart while loading the ladder.  29 CFR 1910.178 (m)(7).

Mr. Bowen's unforeseeable misuse of the Cart, and in particular, all three steps necessary to prevent severe injury, entitles Defendant to summary judgment under MCL 600.2947(2).

**E.**      **Defendant Cannot be Held Liable Where Plaintiff Cannot Establish the Duty Element of a Defective Design Claim**

MCLA 600.2946(2) sets forth the elements a plaintiff must establish in a design defect case.  It provides, in relevant part:

In a product liability action brought against a manufacturer or seller for harm allegedly caused by a production[5] defect, the manufacturer or seller is not liable unless the plaintiff establishes that the product was not reasonably safe at the time the specific unit of the product left the control of the manufacturer or seller and that, according to generally accepted production practices at the time the specific unit of the product left the control of the manufacturer or seller, a practical and technically feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others . . .

In this case, Plaintiff cannot establish and has not established through discovery that the Cart was not reasonably safe at the time it left the Defendant's control, and, accordingly, cannot establish his claim.

In *Cacevic v Simplimatic Engineering Co (On Remand),* 248 Mich App 670; 645 NW2d 287 (2001), the court held that a manufacturer has a duty to eliminate any unreasonable risk of foreseeable injury[6] arising from its product and that a plaintiff, to establish a *prima facie* claim based upon a design defect premised upon the omission of a safety device, must show:

(1) the magnitude of foreseeable risks, including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident; and

(2) alternative safety devices and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger. The latter showing may entail an evaluation of the alternative design in terms of its additional utility as a safety measure and its trade-offs against the costs and effective use of the product.

---

[5] "**Production**" means manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling. MCL 600.2945(i).

[6] There is no duty to warn or protect against dangers obvious to all. *Adams v Perry Furniture Co,* 198 Mich App 1; 497 NW2d 514 (1993), lv den 445 Mich 901; 519 NW2d 860 (1994), overruled in *Allied Electrical Supply Co v Tenaglia*, 461 Mich 285; 602 NW2d 572 (1999). Here, Defendant had no duty to warn where the risks associated with failing to turn off a powered vehicle, to set the parking brake and leaving it unattended are open and obvious to all.

In the instant case, Plaintiff has no evidence to establish the magnitude of the foreseeable risk of inadvertent movement of a powered industrial vehicle caused by an object being dropped on the accelerator of a cart.  Significantly, Plaintiff's expert recognized in his first letter to Plaintiff's counsel, the  need for "data that shows a high frequency of accidents where the cart moved accidentally by depression of the accelerator pedal." **Exhibit D,** Koenig dep tr pp 92-93 and July 9, 2002 letter, Exhibit 2 to Koenig dep.  He never received it and, in fact, could not identify a single incident in which a person was injured as a result of inadvertent movement caused by an item falling on an accelerator pedal of a powered industrial vehicle.  **Exhibit D**, Koenig dep tr pp 93-94.  How then, can Plaintiff reasonably argue that the Accident was reasonably foreseeable and Defendant should have installed an Operator Present Switch when there is no evidence that this type of accident had ever occurred before?

All six deponents in this case agree: if Mr. Bowen had followed even one of the three instructions on the dash of the Cart and in the Owner's Manual, namely, turning the toggle power switch to OFF, the Accident would not have occurred.  Under the circumstances, it cannot be argued that the Cart was not reasonably safe at the time the specific unit of the product left the control of the manufacturer and summary judgment is proper under Fed. R. Civ. P. 56(c).

### F.    Defendant Cannot Be Held Liable Where Plaintiff Cannot Establish the Causation Element of a Defective Design Claim

A *prima facie* products liability claim requires proof that the manufacturer's negligence was a cause of the plaintiff's injuries. *Skinner v Square D Co,*  445 Mich 153; 516 NW2d 475 (1994), reh den 445 Mich 1233; 521 NW2d 15 (1994). Proof of proximate cause entails proof of two elements: (1) cause in fact, and (2) legal, or proximate, cause. *Skinner v Square D Co,*  445 Mich 153; 516 NW2d 475 (1994), reh den 445 Mich 1233; 521 NW2d 15 (1994). In a products liability case, proof of cause in fact generally requires showing that but for the defendant's

actions, the plaintiff's injury would not have occurred. *Id.* A plaintiff must adequately establish cause in fact before proximate cause becomes a relevant issue. *Id.*

As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions but not deducible from them as a reasonable inference. *Id.* There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, it is only conjecture. A causation theory must have some basis in established fact; only slight evidence is not enough. The plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the injuries would not have occurred.[7] *Id.* Plaintiff cannot meet that standard here.

### 1.    Cause in Fact

Here, Plaintiff has only "slight evidence" to support his causation argument. Plaintiff has reported at least seven different versions as to how this Accident occurred and has now settled on the theory that he believes is most promising for recovery. However, Plaintiff admits now he does not know how the accident occurred. **Exhibit G**, Lesho dep tr pp 139-140. The only other person on the scene, Mr. Bowen, testified that he never saw Cart hit the Plaintiff and he never saw the leg of the ladder hit the accelerator pedal. **Exhibit F**, Bowen dep. tr. pp 17, 28. Rather, he simply says the Plaintiff was pinned against the guard post. **Exhibit F**, Bowen dep. tr. pp 17.

---

[7] If reasonable minds could not differ regarding the proximate cause of a plaintiff's injury, the Court should rule as a matter of law. *Dedes v South Lyon Community Schools,* 199 Mich App 385; 502 NW2d 720 (1993), rev'd 446 Mich 99; 521 NW2d 488 (1994), reh den 447 Mich 1202; 525 NW2d 450 (1994), overruled in part in *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307, reh den sub nom *Cooper v Wade*, 463 Mich 1211; 618 NW2d 590 (2000), after rem 233 Mich App 329; 590 NW2d 605 (1998), lv den 463 Mich 980; 624 NW2d 186 (2001)

It is just as likely that the injuries were caused by: a) a ladder falling on Plaintiff's leg as he reported to several medical care providers or  b) a fall at the plant as reported by Plaintiff to his surgeon. Plaintiff has not presented substantial evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, his injuries would not have occurred

## 2.    Superseding/Intervening Cause

In this case, the Accident occurred only after the supplier, at GM's request, removed a critical safety device, the key switch, and the operator of the Cart failed to follow any of the Defendant's instructions for leaving the Cart unattended.    These secondary acts are superseding/intervening acts which relieve the Defendant of liability.

A superseding cause is one which intervenes to prevent a defendant from being liable for harm to a plaintiff even though the defendant's negligence was a substantial factor in causing the harm.  To be a superseding cause, an intervening force must not have been reasonably foreseeable.  *Ridley v Detroit,* 231 Mich App 381; 590 NW2d 69 (1998)[8]   In this case, Plaintiff's expert has indicated that he is unaware of any prior, similar accidents involving inadvertent movement of an industrial vehicle which could have placed the Defendant on notice.  The Accident was not reasonably foreseeable.  The removal of the safety device was not reasonably foreseeable.  The operator's complete failure to follow any of the prescribed instructions was not reasonably foreseeable.   Under the circumstances, the cumulative actions of third parties intervened and superseded any alleged negligence on Defendant's part, thus precluding liability. Summary judgment is proper.

## 3.    The Operator Present Switch

---

[8] Remanded, 463 Mich 932; 622 NW2d 65 (2000), on rem 246 Mich App 687; 639 NW2d 258 (2001), vac'd and rem'd 468 Mich 862; 659 NW2d 228, on second rem 258 Mich App 511; 673 NW2d 448 (2003).

Plaintiff maintains that an Operator Present Switch could have prevented the injury here. Yet, his expert has not conducted any research or testing to confirm that conclusion. In fact, at deposition, the expert testified that there is some amount of weight that must be placed on an operator's seat in order to activate the Operator Present Switch. **Exhibit D,** Koenig dep tr p 183. He conceded that he never determined what amount of weight it would have taken on a cart equipped with an Operator Present Switch to stop it from moving forward in the case of inadvertent depression of the accelerator pedal. *Id.* He further conceded that even if a cart is equipped with such a Switch, it is possible that the dropping of an item on the seat which also strikes the accelerator pedal could cause the cart to move forward. *Id.* at 184. Accordingly, even if the Operator Present Switch was installed on the Cart at the time of the Accident, Plaintiff's expert concedes that a similar accident could occur. That is insufficient to establish a design defect case in Michigan.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the Defendant respectfully requests that this Court grant this Motion and enter Judgment pursuant to Fed R Civ P 56(c) in favor of the Defendant and against Plaintiff, together with an assessment of costs and attorneys' fees as permitted under Fed R Civ P 37(c)(1).

<div style="margin-left:40%">

Respectfully submitted,
Kerr, Russell and Weber, PLC

<u>/s/ Lisa A. Robinson</u>
500 Woodward Ave.
Suite 2500
Detroit, MI 48226
(313) 961-0200
Lar@krwlaw.com
P38141

</div>

Dated:  April 15, 2005

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system.

I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:

    Neal J. Wilensky

                    Respectfully submitted,

                    Kerr, Russell and Weber, PLC

                    /s/ Lisa A. Robinson
                    500 Woodward Ave.
                    Suite 2500
                    Detroit, MI 48226
                    (313) 961-0200
                    Lar@krwlaw.com
                    P38141