UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL LESHO,

    Plaintiff,

v.

TEXTRON, INC.,

    Defendant.

                                /

Case No. 04-73150

Honorable Patrick J. Duggan

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 11, 2005.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                         U.S. DISTRICT COURT JUDGE

On July 2, 2004, Plaintiff Daniel Lesho brought this products liability action against Defendant Textron, Inc., the manufacturer of the E-Z Go Workhorse Cart, in the Circuit Court for the County of Oakland, State of Michigan. On August 16, 2004, Defendant removed the action to this Court based on diversity jurisdiction. Presently before the Court is Defendant's Motion for Summary Judgment filed on April 15, 2005. The Court held a hearing on June 9, 2005.

**I.    Background**

Plaintiff works for General Motors Corporation as an electrician. On August 11, 2001,

Plaintiff was injured in an accident at work. Plaintiff contends that a ladder that was stacked up against parts fell and hit the accelerator pedal of an E-Z Go Workhorse Cart causing the cart to move forward and injure Plaintiff's right knee and leg. In his Complaint, Plaintiff contends that Defendant was negligent in the design, manufacture, production and distribution of that particular E-Z Go Workhorse Cart, serial number 1244060, because:

   a. It did not have the redundant seat power cut off button.

   b. It did not have any type of accelerator pedal guard.

   c. That it is foreseeable that without the seat power cut off button that an outside event or part such as a ladder could hit the accelerator button when the E-Z Go Cart was parked and propel it forward without human intervention.

   d. Other E-Z Go Carts made by Textron and other manufacturers of similar carts had the seat power cut off buttons.

(Compl. ¶ 14).

## II. Defendant's Motion for Summary Judgment

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

In its Motion for Summary Judgment, Defendant argues that it is entitled to judgment as a matter of law because: (1) Plaintiff cannot identify the specific product that injured him; (2) at the time the cart was sold, it complied with relevant government and industry regulations and standards; (3) after the cart was sold, a safety device was materially altered and such alteration was not reasonably foreseeable; (4) Defendant cannot be held liable for misuse of the cart; (5) Plaintiff cannot establish the duty element of a defective design claim; and (6) Plaintiff cannot establish the causation element of a defective design claim.

**A. The Specific Cart**

The prerequisite in every products liability action is identification of the injury-causing product and its manufacturer. *Abel v. Eli Lilly & Co.*, 418 Mich. 311, 324, 343 N.W.2d 164, 170 (1984). Plaintiff alleges that the powered industrial vehicle which caused the accident was a Model year 2000 E-Z Go Workhorse Cart designed and manufactured by Defendant

3

in 1999, with serial number 1244060. Defendant contends that Plaintiff cannot identify which of the many carts at General Motors caused the accident.

On the date of the accident, Plaintiff did not specifically identify which cart injured him. According to Defendant, in June 1999, Chief Cart, the supplier, sold eighteen Textron carts to General Motors: twelve four-passenger and six two-passenger carts. (Def.'s Mot. Ex. E, Fagan Dep. at 16). Plaintiff identified one of the two-passenger carts as the injury-causing product. Plaintiff testified that his department used four powered carts, two of which had a two-passenger capacity. (Def.'s Mot. Ex. G, Lesho Dep. at 84-87). Plaintiff testified that the only difference he was aware of between the two carts was that the one involved in the accident had his tool box on the back of it. (*Id.* at 100-02). However, Mark Bowen, a General Motors electrician, testified that on the day of the accident, he took Plaintiff's tools out of the cart and placed them in Plaintiff's locker. (Def.'s Mot. Ex. F, Bowen Dep. at 60).

Within two weeks of the accident, General Motors hired Terry Dobbyn of Great Lakes Power Service to inspect the cart that General Motors had identified as the cart involved in the accident.[1] (Pl.'s Resp. Ex. 6). The cart Dobbyn inspected bore the serial number 1244060. (Pl.'s Resp. Ex. 7). In addition, Plaintiff and other General Motors employees contend that the cart that was involved in the accident bore the serial number 1244060. Viewing this evidence in the light most favorable to Plaintiff, the vehicle that injured Plaintiff is the E-Z Go Workhorse Cart, serial number 1244060 (the "cart").

**B. Government and Industry Standards**

---

[1] There is no information in the record as to how General Motors identified which cart caused the accident.

4

1. <u>Government Standards</u>

Defendant contends that the cart's design and manufacture met all government standards, requiring judgment as a matter of law on Plaintiff's product liability action pursuant to MICH. COMP. LAWS ANN. § 600.2946(4), which provides, in pertinent part:

> In a product liability action brought against a manufacturer or seller for harm allegedly caused by a product, there is a rebuttable presumption that the manufacturer or seller is not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that allegedly caused the harm was in compliance with the standards relevant to the event causing the death or injury set forth in a federal or state statute or was approved by, or was in compliance with regulations or standards relevant to the event causing the death or injury promulgated by, a federal or state agency responsible for reviewing the safety of the product. . . .

The applicable government standard, 29 C.F.R. § 1910.178 entitled, "Powered Industrial Truck," governs all design and safety requirements for the cart. 29 C.F.R. § 1910.178 provides, in part:

> This section contains safety requirements relating to fire protection, design, maintenance, and use of fork trucks, tractors, platform lift trucks, motorized hand trucks, and other specialized industrial trucks powered by electric motors or internal combustion engines. . . .
>
> All new powered industrial trucks acquired and used by an employer after the effective date specified in paragraph (b) of 1910.182 shall meet the design and construction requirements for powered industrial trucks established in the "American National Standard for Powered Industrial Trucks, Part II, ANSI B56.1-1969", which is incorporated by reference as specified in Sec. 1910.6, except for vehicles intended primarily for earth moving or over-the-road hauling.

29 C.F.R. § 1910.178(a)(1)-(2).

Plaintiff contends that the cart should have included a seat safety switch so that when an operator got off the seat, the vehicle would not travel in either direction if something was accidentally dropped on the accelerator pedal. Defendant admits that the cart did not have

5

such a switch but points out that there is nothing in B56.1-1969 that requires the installation of an "Operator Present Switch" on the cart.

Plaintiff contends that the cart was required to comply with B56.1-1969 *and* the previous ANSI standard promulgated in 1959 and subsequent ANSI standards including the 1975 standard, which Plaintiff contends it does not. Section 615 of B56.1-1959, provides, in pertinent part: "Electric lift trucks, of sit-down rider type, in capacities up to 10,000 pounds shall be provided with a switch that will automatically open the driving circuit when the operator leaves the machine." (Pl.'s Resp. Ex. 19). The Court is satisfied that the cart when manufactured in 1999, complied with the OSHA regulation, 29 C.F.R. § 1910.178, and thus, the rebuttable presumption set forth in the Michigan statute exists. While Plaintiff admits that the specific language of § 1910.178 incorporated the requirements of ANSI B56.1-1969, which does not require a seat safety switch, he nevertheless argues that because the 1959 ANSI standard did require a seat safety switch, the OSHA regulation simply "inadvertently" omitted this provision from the language of the regulation. Moreover, Plaintiff argues that because the 1959 standard is more protective, the Court should conclude that the OSHA regulation applicable to the manufacturer of this cart in 1999, 29 C.F.R. § 1910.178, by implication incorporates the requirement of a seat safety switch as required by the 1959 ANSI standard. The Court rejects Plaintiff's argument.

The language of § 1910.178 clearly adopted the 1969 ANSI regulation which did not require a seat safety switch. Therefore, because the cart complied with applicable government standards at the time of its manufacture in 1999, the Court is satisfied that a rebuttable presumption of no liability exists.

6

2. Industry Standards

Furthermore, although compliance with industry standards does not create a rebuttable presumption of nonliability, it is "admissible as evidence in a product liability action that the production of the product was in accordance with the generally recognized and prevailing nongovernmental standards in existence at the time . . . ." MICH. COMP. LAWS ANN. § 600.2946(1). The most recent ANSI standard adopted prior to the manufacture of this vehicle in 1999, was B-56.8-1993, which both parties agree does not require a seat safety switch. Therefore, this Court is satisfied that the cart complied with the applicable ANSI standard at the time it was manufactured in 1999.

C.  **The Effect of a Rebuttable Presumption**

The existence of a rebuttable presumption requires that the Plaintiff offer admissible evidence to rebut the presumption. Plaintiff contends that even if the presumption is established, the jury must decide whether or not Plaintiff has introduced sufficient evidence to rebut the presumption. However, "[t]he rebuttable presumption indeed goes not only to the jury's assessment of these claims but also to whether these claims should go to a jury in the first instance. *Mut. Ins. Co. of Am. v. Royal Appliance Manuf.*, 112 Fed. Appx. 386, 2004 WL 1858852, at *2 (6th Cir. Aug. 17, 2004); *see also Lavin v. Childcraft Indus., Inc.*, No. 245386, 2004 WL 840230, at *2 (Mich. Ct. App. Apr. 20, 2004) (finding summary disposition appropriate where plaintiff was unable to rebut the presumption); *Michal v. PDK Labs.*, No. 23493, 2003 W.L. 22160438, at *5 (Mich. Ct. App. Sept. 18, 2003) (concluding that summary judgment was properly granted because plaintiff failed to rebut the presumption by "presenting no evidence that the product was not in compliance with the

7

federal regulations").

In this Court's opinion, to rebut the presumption, and thus defeat Defendant's Motion for Summary Judgment, Plaintiff must point to admissible evidence in the record which, if believed by the jury would rebut the presumption. In this case, the only evidence that Plaintiff has presented is the testimony of his expert Milton Koenig, a mechanical engineer. Dr. Koenig's testimony does not, in this Court's opinion, rebut the presumption. In Dr. Koenig's opinion, the cart was unsafe because it did not have the seat safety switch. In his deposition testimony, Dr. Koenig indicated a belief that the failure to include a seat safety switch when this cart was manufactured in 1999, was contrary to the requirement of the then existing OSHA standard and the applicable ANSI standard. Because the Court has already concluded that the manufacturer of this cart was in compliance with the OSHA standard, Dr. Koenig's testimony on this issue is rejected.

In this Court's opinion, the only support for Dr. Koenig's testimony that the cart was unsafe at the time of the manufacture is his conclusion that if the cart had contained the seat safety switch, this accident would not have happened. Dr. Koenig stated:

> And it appears in this case, from the description of the accident, that Mr. Bowen accidentally placed the ladder on the accelerator pedal and, unfortunately, Mr. Lesho was standing in front of the vehicle and was struck by it.
>
> I think that it is foreseeable that you can have accidental actuation of the throttle on this particular vehicle. I think it is foreseeable that the operator of the vehicle may not follow the warnings, and that the warnings used did not protect against this hazard.
>
> And I think that it has been well-defined in Bulletin 67, old concept, that human beings make errors, and you have to expect errors.
>
> And what you want to do in this case is use something like 201 in my report to

8

> eliminate the hazard through design mechanisms which have permanency and don't rely on a human being or the training of that human being, which I feel is used when the warnings were put on this vehicle as a design protection. It is not going to be effective.
>
> And you are going to have some cases where people will make a mistake, will not follow the instructions, didn't receive the training or do not recall the training.
>
> And I think that the installation of a seat safety switch has a high probability of eliminating the possibility of Mr. Lesho being injured when he was pinned between the vehicle and the post guarding the door.

(Koenig Dep. at 50-51).

However, simply because the product does not incorporate features that would make it safer, does not mean that the product is necessarily unsafe. *See, e.g.*, *Fisher v. Kawasaki Heavy Indus., Inc.*, 854 F. Supp. 467, 471-72 (E.D. Mich. 1994) (recognizing that "the mere assertion by an expert that a proposed alternative would have been 'safer' is insufficient to create a question of fact as to whether or not the chosen design was 'defective.'"). "A manufacturer has a duty to 'eliminate any unreasonable risk of foreseeable injury.'" *Bazinau v. Mackinac Carriage Tours*, 233 Mich. App. 743, 756, 593 N.W.2d 219, 225 (1999) (citing *Prentis v. Yale Mfg., Co.*, 421 Mich. 670, 693, 365 N.W.2d 176 (1984)). In *Bazinau*, the Court of Appeals explained:

> [A] prima facie case of a design defect premised upon the omission of a safety device requires first a showing of the magnitude of the *foreseeable risks*, including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident. It secondly requires a showing of alternative safety devices and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger.

*Bazinau*, 233 Mich. App. at 757, 593 N.W.2d at 225 (quoting *Reeves v. Cincinnati, Inc.*, 176 Mich. App. 181, 187-88, 439 N.W.2d 326 (1989)) (emphasis added by *Bazinau* Court).

9

Thus, for a plaintiff to prove that a product was unsafe when it left the manufacturer, Plaintiff must prove that the "type of accident precipitating the need for the safety device" was foreseeable. The cart, when it left the manufacturer, was equipped with a dash-mounted key switch with an indicated "off" and "on" position, a "dead man" accelerator control, a forward/reverse/neutral selector, and a service brake and parking brake. In front of the operator was a plate which stated:

> WARNING! FAILURE TO FOLLOW THESE INSTRUCTIONS MAY RESULT IN SEVERE PERSONAL INJURY
>
> BEFORE LEAVING VEHICLE TURN KEY "OFF," MOVE THE DIRECTION INDICATOR TO "NEUTRAL" POSITION AND ENGAGE PARKING (PARK) BRAKE.

The accident causing the injury to Plaintiff allegedly occurred when the operator of the cart, after exiting the cart without turning the power off and placing the manual forward/reverse/neutral selector into the neutral position, dropped a ladder that fell on the accelerator pedal of the cart causing it to lurch forward and strike Plaintiff

The only "evidence" offered by Plaintiff to meet the foreseeability element is Dr. Koenig's opinion that the "type of accident" that occurred here was foreseeable. However, Dr. Koenig offers nothing to support his conclusion that the "type of accident precipitating the need for the safety device" was foreseeable. He acknowledged that he never did any research to determine the likelihood of an accident occurring involving the inadvertent movement of the cart as allegedly took place here. (Koenig Dep. at 173-74).

While there is testimony in the record that operators do on occasion fail to heed warnings, in this case, the operator's failure to heed three safety warnings, i.e., failure to turn

10

power off, failure to put selector in neutral and failure to engage parking brake were a significant cause of the movement of the cart and the resulting injury.[2] Even Plaintiff's expert, Dr. Koenig agrees that foreseeability of this "type of accident" is questionable:

> I don't know whether the claim that these types of vehicles should have [an operator present switch] will be accepted by a jury unless we can get data that shows a high frequency of accidents where the cart moved accidentally by depression of the accelerator pedal.

(Koenig Dep. at 92). Dr. Koenig acknowledges that there is no such data available. (Koenig Dep. at 93-94; 173-74).

Dr. Koenig further testified that because the production of carts was low, it would be speculative to come up with any statistical probability of such an accident occurring with this particular kind of cart. (Koenig Dep. at 92-93). Moreover, he has no evidence whether Defendant's key competitor ever received notice of an accident involving inadvertent movement of one of the carts and he was unaware of a single incident in which a person was injured as a result of inadvertent movement caused by items falling on the accelerator pedal. (Koenig Dep. at 93-94).

In this Court's opinion, it was not foreseeable that an operator would ignore the warning on the cart and leave the power on, fail to move the direction indicator to neutral and fail to engage the parking brake, and at the same time, an object would fall depressing the accelerator pedal. The likelihood of occurrence of this "type of accident" is extremely remote. In other words, the manufacturer had no reason to anticipate or foresee that this type

---

[2]Not only did the cart contain warnings, but the record reflects that the operator was trained in the general use of battery operated carts and hazards associated with battery operated carts. (*See* Bowen Dep. at 40, 42-43).

11

of accident was "likely" to occur.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

_____
s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Neal J. Wilensky, Esq.
Lisa A. Robinson, Esq.